Your Honors, this case involves a patent, the 330 patent, which claims a natural composition for use in preventing the formation of ice or snow on outdoor surfaces, roadways primarily, and also for de-icing those particular surfaces. Upon its issuance in 2000, the product which was produced under the trade name GeoMelt enjoyed wild success. That success is evident in the file wrapper of this re-examination. In particular, eight different articles and memos talking about its success, 14 different declarations from customers regarding its success, declaration from a manufacturer who he had engaged in of the 330 patent. Also, the third party requester for the re-examination that ultimately occurred in 2009 and 2010 even had a product data sheet talking about what a great invention this is and how it was all produced under the 330 patent. The board essentially said that all this objective addition of non-obviousness is irrelevant because there's nothing new about the product. In other words, you can't have a nexus to a novel feature if, in fact, the novel feature doesn't exist. Yes, Your Honor, that is what the board said. I think the board was wrong for a couple of very specific reasons. First of all, as you know, Your Honor, this court has said multiple times that if a product within the scope of the invention is sold and has success, there is a presumption of a nexus. The court has said that many, many times. The board didn't address that at all. What I think the court made its mistake on was that it relied primarily on two prior art references, the Zittes Law reference and the Public Works reference. Both of those references, quite frankly, are different products. Why did you use the phrase in discussing Zittes Law that you said it may not be equivalent to DSBM? I mean, isn't your argument that it's not? It is not. It is not equivalent. I will say that unequivocally, Your Honor. Isn't the core of your argument that there really isn't substantial evidence to support the prima facie case that the examiner made? Yes, Your Honor. That's what I understood where you really were, because you said there's no showing that the stuff in the Polish reference isn't just molasses as opposed to desugared. Correct. That is absolutely right. You made that point very early on. In fact, in response to the first rejection, you said it's not the same stuff. Correct. You believe that if that showing can't be made, if there isn't substantial evidence, you don't put Z and Daly together, there's no prima facie case. You never need to get to the secondary considerations. The case goes back. Yes, Your Honor. Yes. Zittes Law, whereas you referenced the Zittes Law. How are we going to find this out? Molasses for molasses that's made from sugar beets. If you look it up, it's typically considered to have 50% sugar. That's what the Polish reference has, right? Correct. The Polish reference is 50%. Daly has got what, 15% sugar, and then it's got a bunch of carbohydrates. Correct. The examiner's view was, well, you can add the carbohydrates to the sugar because carbohydrates sooner or later turn into sugar, right? I don't know that the examiner specifically said that. He adds them up. He does add them up. The examiner didn't make any showing that all carbohydrates all metabolize to sugar at the same time, which they don't. There was absolutely no showing of that. Part of your argument was that you really can't mix carbohydrates and sugar together to get a larger percentage in Daly. That's absolutely part of it, or a large part of it, Your Honor. The fact of the matter is even the Daly reference, and again, we think the Daly reference is non-analogous art for a lot of different reasons, but even the Daly reference says that DSBM, desugared sugar beet molasses, by definition has to be less than 30% sucrose, less than 30% sugar. Zadda's law expressly says it's 50% sugar. It's made by a different process. It is molasses. Our invention is- That's something Law of Ordinary Skill in the Art would understand that definition at 30% and would accept it, making that argument? Well, first of all, there was no showing of what the person of ordinary skill in the art, who that person was, or what that person would know at all. That wasn't even discussed at the office. I believe, as I understand it, that a person of ordinary skill in the art would recognize that those are two different things. The novelty and the non-obviousness of the 330 patent was the fact that it was relying on desugared sugar beet molasses. It was not as a result of the distillation of alcohol, which is what was shown in public works. That was the public works disclosure, was the byproduct of the distillation of alcohol. That is expressly disclaimed in the 330 patent. Zadda's law is molasses. Our invention is desugared sugar beet molasses. The way you make molasses is by desugaring sugar beets. If you look it up, the process for making molasses goes through a series of process where you expose the sugar beet to a number of processes and you suck the juice off. Then you're left with something and you centrifuge it and you throw some of the crystals out. I think you are hitting on your honor the difference in Zadda's law. Zadda's law talks about simply centrifuging a sugar beet concentrate. Whereas, if you look at the processes that are disclosed in the 330... What I'm saying is that if you look it up, that's what you do to make molasses. Molasses has significant sugar concentrations in it. That is true. Desugared sugar beet molasses includes significantly less. In the Stefan process in particular, results in 15 percent-ish sugar. That's the whole point of calling it desugared. That is the whole point of calling it desugared. Let me ask you about Daly. I know you say Daly is in a different field, a technological field. Does it have to be precisely in the same field if it's dealing with desugared molasses? Couldn't you say that it doesn't really matter what field it's in? Wouldn't one of skill in the art look to any system that's using desugared molasses for a variety of purposes? I don't think so, your honor. This court has said many times that in order to be analogous, it either has to be in the same field or reasonably pertinent to the same field. If you look at the fields here, the field for the 330 patent is de-icing roadways. Cut to the chase. De-icing for Daly is tire ballast. The board essentially said, well, they're both used outside. That's not reasonably pertinent to your honor. The fact of the matter is, somebody who is looking at... They're both used outside and when it's important that it has a particular freezing point, right? Possibly. Possibly. But in your client's own patent, he cites the Daly and says, we look to Daly, we incorporate Daly herein entirely and we looked at it for the properties of desugared sugar beet molasses. Well, your honor, I would... That's in column five of your patent. Yes, I know exactly. Your honor, and I would disagree slightly in that regard. First of all, merely citing to a prior art reference is not some admission of materiality. It is not some admission that it is material to determine whether that reference is relevant to an obviousness analysis. It might be indicative of whether one skilled in the art would even look at it, right? But you have to remember why Daly was cited. He's citing it for the properties. He said, we're citing this disclosure that relates the production of desugared and the properties thereof. I think if you read... I'm sorry, your honor. Yeah, and then that would pick up your definition 30%, right? That would pick up the definition of 30% and it's the properties of the Stefan method of producing. But I think if you read that entire paragraph, what you see is that the inventor is citing to Daly primarily to say, to identify where you can buy desugared sugar beet molasses. That is made by the Stefan process. There's a whole list of manufacturers and it is those manufacturers and the concept of desugared sugar beet molasses that it is cited for. But it's not cited for the fact that it is relevant prior art that a person of ordinary skill in the art would have looked to at the time of this invention. The simple fact is when you are talking about... But if he's studying the question of whether or not desugared sugar beet molasses has any effect on melt or on melt as the other side of prohibiting freezing. They'd hunt around and they would find out, does go to Google and ask whether or not desugared sugar beet molasses interferes with freezing and this Daly will pop up. I would respectfully disagree, your honor. What Daly doesn't talk about, Daly talks about the ability to put the stuff, whatever the stuff is, the desugared sugar beet molasses into the tire. It has the added benefit of not corroding the metal rim. What was going on, what the inventor was dealing with at the time was trying to de-ice, trying to have long lasting effect on roadways and keep them de-iced in the middle of a storm. The ability to spray the material efficiently and so it doesn't clog the sprayers that you see on the roadways. That was the major focus of and to avoid odor and to avoid, to be biologically inert. There's a lot of different... Prior art would look to in terms of any other prior art. Is that a question of fact? Is what a person... I think it has to be supported by substantial evidence. We have to review it for substantial evidence. Yes. Again, and I see that I'm into my response time, but very quickly, your honor, I think the fact of the matter is we have to be very cautious. Again, this court has warned the office many, many times not to too broadly define. In Transocean, in Enricle, in Enricle I should specifically say, this court warned against too broadly defining the fields that are reasonably pertinent to the invention at hand. I think that's exactly the mistake that the office made. To come back to the key case on the prima facie case and whether or not the examiner was right in the first place, don't you really have to upset the prima facie case in order to get real legs on your secondary consideration argument? No, your honor. I don't... Why not? Because if the materials are the same or similar to the same, then they're in the prior art. Your honor, I think, and again... I mean, you've got the Polish patent alone. If it's the stuff, if that molasses is actually de-sugared sugar beet molasses as being used for exactly what your client wants to use his stuff for, then why isn't Z alone something that's in the prior art? Well, again, we think Z is... That's what I'm saying. If you've got a win on, you've got to get Z out, right? That's an important consideration. Again, this court said in Transocean, even in the face of a prima facie case of obviousness, solid evidence of secondary considerations may be sufficient to hold that a particular invention was not obvious. I think, yes... That's true. That's true. But I mean, it's a bedrock principle that if what you're doing is practicing the prior art, audios, secondary consideration... There's no question to that. There's no question, your honor. If I may reserve at least one minute. Thank you. Okay, thank you. We'll save you rebuttal time, Mr. Tiller. Thank you. Ms. Kelly, the office. Good morning, your honors. May it please the court. In the 1920s, people have used D-sugar beet molasses as an anti-freezing and D-icing agent. That's in the Crowfoot reference that is in the appendix here. There is also no dispute that at least since the 1990s... That's not relied on by the examiner, is it? It was relied on by the examiner, the board. There were many rejections. Not in the board, is it? Right, but I'm painting the picture, at least I'm trying to, paint the picture of what the prior art world was. But maybe you ought to paint it in terms of what prior art is actually involved in the case and the decision. Yes, your honor. And that was the next statement that I was going to move to. There's no dispute that since the 1990s, mixtures of D-sugar beet molasses and ethylene glycols or sodium chloride have been used as anti-freezing agents. How do we know that the Polish reference is D-sugar beet molasses? We know it because the 330 patent says so. Your honor, I... What does the 330 patent say there? The 330 patent says so and this is the... I've got the patent open. Okay. I'm looking for the column and the line number. The 330 patent at column 5, it's appendix page 4, column 5, it begins at line 9. Line 9. The older of the two... Processes. Removing sugar. Yeah. And it says, the older of the two most widely used processes of removing sugar from sugar beet... And which is the older of the two? What are we talking about? Centrifuging? What process are we... Right. Put a name on the process. Okay. The 330 patent describes two processes for making D-sugar beet molasses and it says that both of them will serve generally well in the claimed invention. The first one it describes is the older centrifugation process and the second one it describes is the Stefan process. It defines these two processes, which is one it says is the older and the other it says the more modern. In fact, the Stefan process is from the 1880s, so I don't know how much more modern it really is. And it says both of those will serve equally well in the invention. Is there anything in the record that says that the actual process that's used in the Z-reference, as Judge Clemens refers, and in the 330 patent is the same? There is no reference that says they're identical other than the 330 patent. It doesn't say they're identical. Opposing counsel Natural has admitted this, has said that the centrifugation process is the older process. It's the general centrifugation process, but they specifically dispute whether or not the centrifugation process in their patent is the same as in the Zitzelau reference. I did not read their argument to be that way. In fact, I think Judge Clemens made a better argument for them than, in fact, they did. I asked you a question you never answered. I asked you, how do we know that Z is de-sugared sugar beet molasses? And you answered by saying, well, the patent itself, the 330 admits that. And then you went back to column five and you started talking. We're talking about methods of making de-sugared sugar beet molasses. Show me where in the 330 patent there is a concession that Z makes de-sugared sugar beet molasses. A process is described. I'm not asking. We all know that there are two processes and both of those processes can make de-sugared sugar beet molasses. Right? But those processes also, if you don't follow them all the way through, won't make de-sugared sugar beet molasses. It'll make just molasses because you've got to take the extra sugar out. Your Honor, I think. You made a statement to me that there was a statement in this patent that said that Z is de-sugared sugar beet molasses. You know, that's like a Bill Clinton or something, is, is. No, Your Honor. It doesn't say that, right? Respectfully, I don't think that's what I was saying. Quite respectfully. That's what you said. That's what came out of your mouth when I asked you the question. I don't think that I was able to finish my thought then. If I might now, I'm not trying to be contentious here. I come back to the question. Z doesn't talk about de-sugared sugar beet molasses. Your Honor. Let me finish. Z talks about molasses. Okay? Z talks about not de-sugared sugar beet molasses, but molasses, and the two are very different compounds. I'm aware, Your Honor. So, the examiner believed that Z was de-sugared sugar beet molasses. And for that reason, he was able to combine Z with Daly and do some equations and bring up some numbers. And what your adversary is saying is right at that first step, the very first step in the examiner's process where he said, I'm going to treat Z as equal to or close equal enough to Daly to put them together. Your adversary is saying that was error, that there's no substantial evidence to support that equation or semi-equation. With all due respect, Your Honor, I think that's an argument that you are making now. I don't think that's an argument that opposing counsel made in their brief, and it's certainly not an argument. I believe it was made in the brief. I believe it was made in the brief. I think the argument they're making – Excuse me.  Okay? I'm sorry. I believe it was made in their brief, and I believe that the point that they were making is that you can have a process, and you either carry a process all the way through or you don't, and you could still have two different things. So you could have a beer-making process that, at the end of the day, will make our old version of 3-2 beer, which is lower alcohol, or you can have, at the end of the day, it makes a higher alcohol content. But that doesn't – just because the process, the basic process is the same, doesn't mean the end result is the same. And so how do you – let's get to the fact that the end result here is 50% sugar. How do you call 50% sugar de-sugared? Accepting that that's what they argued, because I really – having looked at the record, I don't believe that's what they argued. And I think that argument comes from really reading about sugar processes, because when preparing for this case, I looked at how sugar is de-sugared and realized that Zytoslav is sugar beet molasses. However – and this was admitted in the record. They said the 3-3-0 patent says that process of making sugar beet molasses, that centrifugation process, it describes as being de-sugared beet molasses. Now, that may be an error in the 3-3-0 patent, but that's what the 3-3-0 patent says. And the 3-3-0 patent says that that process of making sugar beet molasses, this thing with 50% sugar, it says that that will serve generally well in this claim to competition. And that's – Didn't the examiner believe that he could connect up Z? Z was made – oh, there's just a mention of centrifuging. Do we know exactly what process was used in Z in the Polish patent? The process described in Z, and your honor is correct in this, is this process of just making sugar beet molasses, not – They don't talk about – Not what ordinary artisans would define as being de-sugared beet molasses. They don't describe the new method, right? They don't describe Stefan, which is respectfully not the new method. The reason why I thought the examiner believed that he was comfortable with the process in Z in the Polish patent was because they used a centrifuge. I believe that the examiner, looking at everything the examiner said, said that Z's process met that description because of what was in the 3-3-0 patent, how the 3-3-0 patent describes how you make de-sugared beet molasses. How did the examiner say that? Which examiner's documents here? The examiner – Is that in the record? Let me try to find it. The examiner talks a great deal about – Did you have a cite to the examiner in one of his documents? I did not – I was aware of the distinction that you're making here. I didn't mark – I'll try to find this part right now. It's actually their response to an argument made by – It's a response made to the arguments made by opposing – by Natural's client. I mean, Natural's – Natural to the board. I do know that the examiner mentioned the fact that the Polish patent used a centrifuge, but that seemed to me not to be very helpful because molasses is made through a centrifuge process as well, where you're not even trying to de-sugar at all. Right. And looking outside of the record to something called the sugar beet handbook, because I was interested in how sugar beet molasses is made and de-sugared, that's when I discovered that, in fact, what the 330 patent and what Zittus Law describe as being a de-sugaring process is actually a process of making molasses. But the examiner has the burden of establishing a prima facie case and merely saying that because something is made from the same process, in the end of the day it becomes the same thing isn't enough, is it? In this case, I believe it is, Your Honor, and here's why. Because the issue in this case is whether these ranges of this de-sugared beet molasses and either the ethylene glycol or rock salt have been disclosed in the prior art. And the issue here is how much sugar you have in these things and whether they're equatable or not. And the examiner went through and did the calculations and found that these very broad-range claims, in fact, the prior art overlaps what is found in the claims, and that's the issue here. There's never anything in the claims that talks about 50% sugar. We have something that has the properties that does. We have something that the 330 patent says is de-sugared beet molasses. Whether those first and foremost areas of the art would necessarily define it that way, the 330 patent has certainly defined it that way. Assuming we don't agree that it defines it that way. The examiner went through and did the calculations about what the densities were and converted those by volume ratios to by mass ratios and found that the ranges overlap. And when opposing counsel argued that, oh, the sugar content might be off, which is what he argued. He didn't say one is molasses and one is de-sugared beet molasses. What he said was the concentrations of sugars are very different. One has 50% sugar. Right. How is that different than saying one is sugared and one is de-sugared? It's different because the 330 patent says that that's de-sugared beet molasses. You better get on to another argument because at least I don't buy the argument that it says that something with 50% is de-sugared. So what other basis? Well, the other basis would be that this product meets all of the requirements of the claimed invention. And the board said even if we're wrong about the amounts of sugar, and the examiner said even if we're wrong about the amounts of sugar, it would be ordinary for one of ordinary skill in the art, it would be common, it would be obvious to optimize these ratios. To adjust the amount of sugar, to adjust the amount of solids, and to adjust the amounts of salts and ethylene glycol. And that's what the examiner said and that's what the board said. So what would you be adjusting? I mean, if you say even if you're wrong about sugar, if you're wrong about sugar then we throw the Polish reference out. You said even if you were wrong about sugar. Well, you could further. Let me finish. If we throw the Polish reference out, then what numbers are we playing with to come up with the numbers in the patent? Well, if we throw the Polish reference out, then we're dealing with daily, which opposing counsel readily admits is within the claimed range. This is where I think the argument about the objective indicia is most powerful, and that is that you would have to reach the conclusion that someone would look to daily, that someone of ordinary skill in the art would look to daily. So isn't it indicative of whether they would or would not when you see how successful the product has been? In other words, someone of ordinary skill in the art obviously didn't look to daily and that this objective indicia is supposed to help us avoid hindsight in saying that they would. There are two problems with daily identified by the board. One problem with daily is, first of all, not daily, I'm sorry, the declarations. One problem that the board identified is that there is no express teaching that this geomelt was actually added to salt and ethylene glycol to obtain the claimed invention, and done so at the ratios, because that's what we're arguing about here is the ratios recited in the claims. Again, desugared and properly desugared beet molasses was known since 1926 as an anti-freezing agent. There was no evidence, the board found that natural in the declaration provided no evidence that geomelt was being added to salts or ethylene glycols or any of the other things that are found in the Marcuse group of claim one in the concentrations recited in the claims, or that it was even being added to these other things at all. So you have a problem there with are those people writing these declarations actually using geomelt alone, or are they using the claimed invention? So that's a problem and a failure on natural's part to establish. The other problem that the board identified is the fact that as daily evidences, people already knew that desugared beet molasses and other fermentation products, when you mix them with salts or ethylene glycols, that they are marvelous anti-freezing and de-icing agents. And you also learn from the prior art. They knew, but it doesn't show a combination with ethylene glycol, does it, in the prior art? When you say people already knew? I'm sorry, Your Honor. I heard you say that people knew that the combination of molasses with ethylene glycol and the salt. Yes, I'm sorry. Ethylene glycol, as part of the Marcuse group, is from Zitiswap. Thank you. And daily it discloses, in field report number two, combinations, which is found in public works, discloses combinations of desugared beet molasses or other fermentation products and salt. Doesn't daily actually teach us away from combining the desugared molasses with the inorganic salts? No, Your Honor. He just says it's not preferred because you'll cause corrosion to the tires. But daily fully safe. Wouldn't it cause corrosion to the roads? I mean, if someone that's still in the yard is going to look to both, wouldn't they say, we don't want corrosion? Well, respectfully, road salt corrodes cars and other things on the roads. That's the whole reason people buy the product is because they don't want to use salt. Right. They want to reduce the amount of salt that they use. I mean, as it's used right now, whether it be the ice melter, the geomelter, or desugared beet molasses made and sold by other companies, it's still mixed in with salt. In fact, the Washington Post just published last year that's what's used in D.C. But not for this use. I mean, this is really to try and focus this back and forth. Yes. The combination for a totally different use, accepting that that was known. How do we cross the bridge to this use? Are you referring from daily to this use?  Okay. I just wanted to clarify. We cross the bridge because Daily is specifically using this combination of desugared beet molasses and salt as a ballast, as an anti-freezing agent. He doesn't want to use just water because water will freeze, and then you'd have a block of ice in your farm equipment or outdoor equipment or construction equipment that is just going to act, it'll serve the opposite function of being ballast. It's going to be like throwing your washing machine out of balance. So he needs something that's going to remain fluid. And Daily says, I have this fermentation product, and this fermentation product meets everything the claimed invention says it's going to meet. It's environmentally friendly. It's biologically inert. It will stay liquid. It'll function as an anti-freezing agent to minus 30 degrees. It's low cost. He lists all of the reasons that are listed in the 330 patent as to what he's looking, as to what one is looking for, the problem the inventor is trying to answer. But he uses a different molasses, and this is the bridge we're trying to cross. Well, Daily doesn't use a different molasses. Daily uses, and I think Judge Clevenger would agree, Daily uses desugared beet molasses. The problem for you with Daily is that Daily defines what desugared beet molasses is. That is to say, less than 30% sugar by weight. But Your Honor would agree. It's a definition. And the amount of sugar by weight in the Polish reference is 50%. So, ergo, it's not desugared beet molasses. Simple as that. Right. But Judge Newman was asking about the Daily reference. And does the Daily reference disclose desugared beet molasses that no one would disagree was within the scope of the claims? And I was just asserting that I don't think they would disagree or anyone could disagree that Daily does disclose. But the case that we are reviewing is not an anticipation case based on Daily, nor is it an obvious case based on Daily. It's an obvious case based on the Polish patent plus Daily, plus some computations. Correct? I agree, Your Honor. I was trying to answer Judge Newman's questions about Daily. What I heard the presiding judge say was, well, that was fine, everything you were saying about Daily. And she said, how do you get from Daily back to the Polish reference? That's what I heard the presiding judge ask. That was your question? That was my question. Oh, I'm sorry, Your Honor. I thought you were asking how is Daily. I think perhaps we've exhausted the issues. However, I think we understand the difference. Okay, thank you. Thank you, Ms. Kelly. And let's see. Let's add the time we've run over to Mr. Tillery's time. You may not need it all. Thank you, Your Honor. Two very quick points. One, Judge Clevenger, you asked about the examiner and the board's decision or statement that the ratios would be adjusted. And what the examiner and the board was talking about was adjusting the ratios between desugared sugar beet molasses and potentially ethylene glycol or salt or one of the other compounds that are included in the Marcouche group of Claim 1. That is not an acknowledgement, however, to use a different molasses product. The person of ordinary skill and the art, based on these teachings, is not going to adjust the sugar compound. The sugar compound is defined as less than 30%. The adjustment in ratios is between the desugared sugar beet molasses and those other compounds. The other point, going to what Judge O'Malley asked with regard to the secondary considerations, I think there is ample evidence in those secondary considerations that the claimed invention was being used. There's multiple references in those articles and in those memos about how geomelt is being used in combination with salt. It's reducing the bounce of the salt going off the roadway. It's keeping the salt on the roadway. It's reducing the amount of salt that has to be purchased. It's reducing the labor that's involved with having to declog the machines that spread this stuff. What's your response to your friend on the other side when she says that your affidavits or your declarations don't really say that geomelt practices the invention? As I understood what the board and the examiner did, or at least that the board did, is that it assumed that geomelt... I think there's a statement, as I recall, where the board even says, assuming that geomelt is within the scope of the invention, we're still not going to consider... You disagree that the board actually came right out and said that there was no evidence that it was. Correct. I would disagree with that. Importantly, I think there is evidence when you look at, in particular, the declaration... I forget, it's Mr. Belovick's declaration, if I recall his name correctly. He's a manufacturer of DSBM, or at least a seller of DSBM. He says, I'm selling this product for use in the patented invention, or for use within the scope of the patent. He specifically says that, and he says, this has met a long felt but unmet need. He says that his customers are paying an additional amount for the DSBM for use in the patented invention. Further, there is evidence from the inventor themselves, himself, I should say, the inventor himself, that he has licensed the patent. Then, you go to the product data sheet from the third party requester, who specifically says, produced pursuant to, and it gives the patent number. I think there is ample evidence to show that the secondary consideration evidence was specifically disclosing use of the patented, use of the claimed features, and that there was success, that it was well regarded. We really don't have any adjudication of all of that. These are potential facts, because the board, the examiner in the board, as is quite common in these cases, said I don't need to worry about any of those factors, because this is old sprax and prayer. You're right, Honor. I think the debate about whether or not the particular substance was made pursuant to the patent and all the rest of the stuff is something, if you were in a district court, would be subsidiary facts that would be litigated, because once you got past the priority issue. Yes, absolutely, Your Honor. We don't ever have a record on which to. Correct, and that's the real point here. That's where the board erred in not even considering this evidence. But your case, in a nutshell, just goes right back to the fact that you believe that the examiner did not make the case to show that the Polish patent is teaching de-sugared sugar beet molasses. No question. Full stop. Case is over if you went on that point. Case is over if I went on that point. Over in your favor. Case is over. Yes, thank you, Your Honor. Okay, thank you.